# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

VONCILLE HOLDEN,     :

  Plaintiff,      :

vs.            CA 05-0528-C

            :

JO ANNE B. BARNHART,
Commissioner of Social Security, :

  Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits, widow's insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 22 (order of reference)) Upon consideration of the administrative record, plaintiff's

proposed report and recommendation, the Commissioner's proposed report and recommendation, and the parties' arguments at the April 25, 2006 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to arthritis and degenerative changes, obesity, and skin rashes.  The Administrative Law Judge (ALJ) made the following relevant findings:

1.      The claimant was born on July 13, 1946 and she was 52 years of age at the time of her alleged disability onset date.

2.      The claimant is the surviving spouse of the deceased wage earner Willie Holden, who died fully insured for Title II purposes on March 15, 1994. The claimant remarried after [] the wage earner's death but she meets the requirements set forth in 20 CFR Section 404.335(e)(3)(i) and (ii).

3.      The prescribed period during which the claimant must establish that she is under a disability began in March, 1994, and it extended through March, 2001, i.e., a period of 84 months or 7 years.

4.      The claimant met the insured status requirements under Title II of the Act (for purposes of drawing benefits against her

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

own earnings) on January 1, 1999, the date she stated that she became unable to work, and she continued to meet those requirements through September 30, 2001.

5.    The claimant has not engaged in substantial gainful activity at any time since January 1, 1999.

6.    The claimant alleged back pain, leg pain, and skin rash as possible "severe" impairments, but the same have not been established as entailing significant work-related limitations of record for a continuous period of twelve months during the times at issue. The medical evidence of record does not establish that the claimant has any medically determinable impairment or combination of impairments which is considered "severe" within the meaning of the Social Security Act.

7.    The claimant's testimony regarding pain and functional limitations is not fully credible and consistent with respect to severity, given that there is no objective medical evidence to establish a severe, functionally limiting impairment or combination of impairments over a continuous period of twelve months and the lack of persistent and regular medical treatment for the alleged impairments.

8.    The claimant does not have any impairment or impairments which significantly limit her ability to perform basic work-related activities; therefore, the claimant does not have a severe impairment. (20 CFR Sections 404.1521 and 416.921).

9.    For purposes of her claim for widow's insurance benefits and disability insurance benefits, the claimant has not been under a disability as defined by the Social Security Act and Regulations at any time through the date of this decision; for purposes of her claim for Supplemental Security Income benefits, the claimant has not been under a disability as defined in the Social Security Act, as amended, at any time through the date of this decision.

3

(Tr. 22-23)  The Appeals Council affirmed the ALJ's decision (Tr. 6-8) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

This Court must determine whether the Commissioner's decision to deny claimant benefits on the basis that she does not have a severe physical impairment is supported by substantial evidence.  Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The Commissioner's severity regulation requires the claimant to make a threshold showing that she has an impairment which significantly limits her physical or mental ability to perform basic work activities.  20 C.F.R. §§ 416.920(c), 416.921(a) (1998); *Bowen v. Yuckert,* 482 U.S. 137, 147 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  Basic work activities include

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;  understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).  An impairment can be considered not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984); *see Yuckert, supra*, 482 U.S. at 153, 107 S.Ct. at 2297 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account").[2]

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA [substantial gainful activity] is not seriously affected.  Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities

---

[2]     It is clear that in *Yuckert,* the Supreme Court did not impose a standard higher than the *de minimis* standard set out in *Brady*.  *See Stratton v. Bowen*, 827 F.2d 1447, 1451 n.7, 1452 n.9, 1452-1453 (11th Cir. 1987).

must be made.  A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and the informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of the function is inherent in the medical process itself.

SSR 85-28.  The claimant's burden at step two of the sequential evaluation process is mild.  *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be rejected.").

In analyzing the severity issue at step two of the sequential evaluation process, the ALJ wholly failed to mention or assign weight to the physical residual functional capacity assessment of a non-examining, reviewing physician wherein the physician listed the evidence he reviewed in concluding that plaintiff has a severe musculoskeletal impairment thereby warranting the assessment. (*Compare* Tr. 14-24 *with* Tr. 233-241) While it is true in this circuit that "'[t]he opinions of nonexamining, reviewing physicians, when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence[,]'" *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988), it is also clear that the opinions of non-examining, reviewing physicians are entitled to be accorded

weight when they are consistent with the medical evidence of record, *cf.*
*Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) ("In the case before
us [], Dr. Gordon's opinion that claimant was not disabled on or before
December 31, 1975, is supported by the medical records of physicians who
had examined claimant, including the records of Dr. Harris. Consequently, it
is Dr. Harris' opinion that is contrary to the evidence. The Secretary was
justified in accepting the opinion of Dr. Gordon, a qualified reviewing
physician, that was supported by the evidence, and in rejecting the conclusory
statement of Dr. Harris, a treating physician, that was contrary to the evidence.
The law is clear that, although the opinion of an examining physician is
generally entitled to more weight than the opinion of a non-examining
physician, the ALJ is free to reject the opinion of any physician when the
evidence supports a contrary conclusion."). Because this Court perceives
nothing inconsistent in the medical records listed by the non-examining,
reviewing physician in this case and his conclusion that plaintiff suffers from
a severe musculoskeletal impairment, his opinion was entitled to be accorded
weight by the ALJ. The ALJ's failure to state the weight he was according the
non-examiner's opinion, or his reasons for according it no weight, arguably
requires that same be accepted as true. *Cf. MacGregor v. Bowen*, 786 F.2d

1050, 1053 (11th Cir. 1986) ("Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true."). If nothing else, it  was error for the ALJ to determine that the claimant does not have a severe physical impairment given the non-examiner's report and in absence of evidence from an examining physician supporting such a determination.

This is not the only problem with the ALJ's determination that plaintiff suffers from no severe physical impairment. Specifically, although the ALJ twice in his decision makes passing reference to Jackson's obesity in the course of summarizing the medical evidence (*see* Tr. 18 & 19 ("Dr. Middleton noted that the claimant was obese, that she walked with an antalgic gait, and that she had tenderness to percussion in her low back. . . . He recommended that the claimant take muscle relaxers and anti-inflammatory medications and that she lose weight."); Tr. 20 ("[I]t appears as though the claimant underwent neurological evaluation at the Stanton Road Clinic in March, 2002 and April, 2002. . . . It was also recommended that she lose weight and perform back strengthening exercises.")), he wholly failed to consider whether plaintiff's obesity was a severe impairment, either alone or in combination with plaintiff's musculoskeletal impairments. *Boston v. Barnhart*, 332 F.Supp.2d

879, 886 (D. Md. 2004) ("In this case the ALJ failed to consider the plaintiff's obesity when finding the plaintiff's impairments and identifying impairments, or combinations of impairments, which were severe. [] Thus, the ALJ failed to make a determination as to whether the plaintiff's obesity alone was a severe impairment, and the effects the plaintiff's obesity had on his other impairments."); *cf. Allison v. Commissioner of Social Security*, 347 F.Supp.2d 439, 446 (E.D. Mich. 2004) ("This Court recognizes that obesity can cause a person to be disabled, especially when in concert with other factors."); *Shoate v. Barnhart*, 2003 WL 21556939, *3 (N.D. Cal. 2003) ("Even if Shoate's obesity did not constitute a 'severe impairment' by itself, the objective medical evidence of obesity in combination with the evidence or arthritis in her weight-bearing joints could 'reasonably be expected to . . . produce some degree of symptom.'"). In completely failing to analyze plaintiff's obesity at step 2,[3] the

---

[3]     The Commissioner cannot be heard to argue that the plaintiff never listed obesity as an impairment in her application for benefits because plaintiff, as well, did not list her skin rashes as an impairment, yet the ALJ considered this impairment apparently based upon plaintiff's testimony at the hearing and the composition of the medical records. The Commissioner must necessarily acknowledge that plaintiff gave testimony establishing her obesity at the hearing (*see* Tr. 361 (plaintiff's testimony that she was 5'3" tall and weighed 204 pounds)) and that the medical evidence of record contains two separate diagnoses of obesity (*see* Tr. 334 (Dr. Middleton's letter to Dr. Hassell describing plaintiff as an obese female); Tr. 199 ("Abd: morbid obesity[.]")). *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1049 (E.D. Wis. 2005) ("At step two, the ALJ must first decide whether the claimant's obesity constitutes a medically determinable impairment. Ordinarily, this is accomplished based on a diagnosis of obesity by a treating source or consultative examiner. SSR 02-1p at 3."); *Boston, supra*, 332 F.Supp.2d at 886-887 ("Social Security Ruling 02-1p does not provide precise height and weight requirements

ALJ did not abide by the Commissioner's very regulations which require the adjudicator to determine whether a claimant suffers from a severe impairment or combinations of impairments, 20 C.F.R. § 404.1520(c) (2005), and where multiple impairments exist, to "consider the combined effect of all of [the] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If . . . a medically severe combination of impairments [is found], the combined impact of the impairments will be considered throughout the disability determination process." 20 C.F.R. § 404.1523. Therefore, this Court can reach no other conclusion but that the ALJ committed reversible error by failing to explain why he "did not consider obesity an impairment, severe or not severe, at step two[.]" *Boston, supra*, 332 F.Supp.2d at 885.[4]

_____

for obesity. Instead it states that the existence of obesity is established by: 'generally rely[ing] on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height. Thus in the absence of evidence to the contrary in that case record, we will accept a diagnosis of obesity given by a treating source or consultative examiner.").

[4]   The evidence in this case is not like that in other cases where courts have found that the record did not establish that a claimant's weight contributed to her other conditions or impairments. *See, e.g., Prochaska v. Barnhart*, 2005 WL 901202, *9 (W.D. Wis. 2005) ("Dr. Lochmann, the doctor who evaluated plaintiff's knee pain, did not suggest that plaintiff's knee pain was exacerbated by her obesity and he did not advise plaintiff to lose weight. In contrast to other cases in which courts have chastised ALJs for ignoring the effects of obesity, . . . the record in this case does not suggest that plaintiff's excessive weight contributes to her back or knee conditions."). In contrast to *Prochaska*, as the ALJ's very decision establishes, Jackson's obesity contributes to her musculoskeletal conditions, particularly her back impairment. (*Compare* Tr.

In light of the foregoing, this cause is **REMANDED** to the Commissioner of Social Security for consideration of plaintiff's severe physical impairments, the precise functional limitations attendant to that combination of severe impairments, and a determination of whether plaintiff is capable of performing her past relevant work or any other job existing in significant numbers in the national economy in light of her functional limitations.

## CONCLUSION

The Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239

---

18 & 19 ("Dr. Middleton noted that the claimant was obese, that she walked with an antalgic gait, and that she had tenderness to percussion in her low back. . . . He recommended that the claimant take muscle relaxers and anti-inflammatory medications and that she lose weight.") & Tr. 20 ("[I]t appears as though the claimant underwent neurological evaluation at the Stanton Road Clinic in March, 2002 and April, 2002. . . . It was also recommended that she lose weight and perform back strengthening exercises.") *with, e.g.,* Tr. 333 ("[Dr. Middleton] suggest[s] I call in an Rx for muscle relaxers and anti-inflammatories, also he feels you **need to lose wt. in order to have a healthy back**."))

(1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 11th day of May, 2006.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**